[Cite as *State v. Waltz*, 2014-Ohio-2474.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                                     :

      Plaintiff-Appellee,                     :

                                       :

  - vs -

                                         :

MARSHALL L. WALTZ,                           :

      Defendant-Appellant.               :

CASE NO. CA2013-10-077

O P I N I O N
6/9/2014

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2010CR00337

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

R. Daniel Hannon, Clermont County Public Defender, Robert F. Benintendi, 10 South Third Street, Batavia, Ohio 45103, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Marshall Waltz, appeals a decision of the Clermont County Court of Common Pleas revoking his community control sanction and imposing a previously suspended prison sentence.

{¶ 2} Appellant was indicted in 2010 on two counts of unlawful sexual conduct with a minor. The state alleged that appellant, then 21 years old, engaged in sexual conduct with

his 14-year-old stepsister. Pursuant to a plea bargain, appellant entered a guilty plea to one count of menacing by stalking. On October 5, 2010, the trial court sentenced appellant to five years of community control. Appellant was advised that a violation of his community control sanction could result in a 12-month prison sentence.

{¶ 3} Appellant subsequently violated the terms of his community control by, inter alia, failing to attend a sex offender group treatment, viewing pornography on a computer, and taking his five-year-old niece to Kentucky without supervision. On May 5, 2011, the trial court found that appellant had violated the terms of his community control, ordered that community control continue, and imposed additional community control conditions.

{¶ 4} Subsequently, appellant again violated the terms of his community control by, inter alia, failing to attend sex offender counseling. On October 17, 2011, the trial court found that appellant had violated the terms of his community control, revoked appellant's community control sanction, and sentenced appellant to 12 months in prison. Six weeks later, appellant moved for judicial release. A hearing was held on the motion in February 2012. At the conclusion of the hearing, the trial court granted appellant's motion for judicial release:

> So the Court is going to grant his motion for judicial release. He'll be placed on intensive supervision for a period of not less than one year. He's to complete successfully the sex offender treatment as directed by the probation department. He's to have no contact direct or indirect with [the victim] or any of her household members.

{¶ 5} Subsequently, by judgment entry filed on February 22, 2012, the trial court granted the motion for judicial release, and ordered that "the prison sentence be suspended and the defendant be placed on community control for a period of <u>one (1) year</u> under the control and supervision of the Adult Probation Department[.]" (Emphasis sic.) The trial court also ordered that appellant be "placed on Intensive Supervision for a period of not less than

one (1) year." (Emphasis sic.)

{¶ 6} Nearly ten months later, on December 10, 2012, the trial court sua sponte issued a Corrective Entry ordering appellant "to resume his original community control period of five (5) years with Intensive Supervision for a period of not less than one (1) year." In its entry, the trial court explained that:

> On February 14, 2012, the Court suspended the balance of sentence and granted defendant's motion for judicial release. It was the Court's intention to have the defendant resume his original sentence of five (5) years on community control with the additional specific sanction that the defendant be placed on Intensive Supervision for a period of not less than one (1) year. However, the written record only reflected the placement of the defendant on community control for the period of Intensive Supervision.

{¶ 7} While on judicial release, appellant once again violated the terms of his community control by, inter alia, failing to attend individual sex offender counseling. Consequently, in June 2013, the probation department filed an affidavit for community control violation. Appellant moved to dismiss the community control violation and terminate his community control sanction. Appellant argued that the trial court's corrective entry was an invalid nunc pro tunc entry; the February 22, 2012 entry placed appellant on community control and Intensive Supervision for only one year; the Intensive Supervision had concluded and his community control had "expired"; and as a result, the trial court no longer had jurisdiction to hear the community control violations.

{¶ 8} On August 6, 2013, the trial court overruled appellant's motion to dismiss on the ground that:

> it was clear at the judicial release hearing that the defendant would be required to submit to three and a half years of the Court's supervision. At the hearing, the Court entered into a colloquy with the defendant regarding the term of his community control sanction and the defendant stated he wanted the supervision rather than the prison sentence. Based upon the content of the oral hearing, the Court's Corrective Entry did not

impose an additional sanction on the defendant. Instead, the Corrective Entry reflected what the Court actually decided.

{¶ 9} Subsequently, the trial court held a hearing on appellant's community control violation. By judgment entry filed on September 3, 2013, the trial court found that appellant had violated the terms of his community control, revoked appellant's community control sanction, and sentenced appellant to serve the balance of his 12-month prison sentence.

{¶ 10} Appellant appeals, raising one assignment of error:

{¶ 11} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS.

{¶ 12} Appellant argues that the trial court's December 2012 corrective entry was in fact a nunc pro tunc entry improperly used by the trial court to reflect the sanction the court intended to, but did not actually impose when it granted appellant judicial release. Appellant asserts that as a result, the trial court no longer had jurisdiction over appellant's community control and it should have granted his motion to dismiss.

{¶ 13} Trial courts lack authority to reconsider their own valid final judgments in criminal cases, with two exceptions: (1) when a void sentence has been imposed, and (2) when the judgment contains a clerical error. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 14; *State v. Burton*, 12th Dist. Clermont No. CA2013-09-071, 2014-Ohio-1692, ¶ 13.

{¶ 14} A sentence not in accordance with statutorily mandated terms is void as no court has the authority to impose a sentence that is contrary to law. *Burton* at *id.*, citing *State v. Fisher*, 128 Ohio St.3d 92, 2010-Ohio-6238. In its February 22, 2012 entry granting judicial release, the trial court suspended appellant's prison sentence and placed appellant on community control (as well as intensive supervision) for a period of one year. The trial court's order was in accordance with R.C. 2929.20(K).[1] In the event a trial court grants a

---

1. R.C. 2929.20(K) provides in relevant part that:

motion for judicial release, R.C. 2929.20(K) "allows the court to * * * suspend the remainder of the prison sentence until the defendant either completes a term of community control (maximum of five years) or violates the conditions of his release." *State v. Hoy*, 3d Dist. Union Nos. 14-04-13 and 14-04-14, 2005-Ohio-1093, ¶ 21.

{¶ 15} As the February 22, 2012 entry imposed community control for a period of one year, it was within the range authorized by R.C. 2929.20(K). The entry, therefore, did not impose a void sentence and the trial court had no jurisdiction to reconsider that sentence pursuant to the "void sentence" exception in *Miller*. *Miller*, 2010-Ohio-5705 at ¶ 14. Consequently, if the trial court is to have jurisdiction over appellant's community control, it must be pursuant to the "clerical error" exception in *Miller*. *Id.*

{¶ 16} Crim.R. 36 specifically authorizes a trial court to correct clerical mistakes in judgments at any time. A clerical error or mistake is "a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, ¶ 18. While courts have inherent authority to correct clerical errors in judgment entries so that the record speaks the truth, nunc pro tunc entries are limited in proper use to reflecting what the court *actually decided*, and not what the court might or should have decided or what the court intended to decide. *Id.*; *Miller* at ¶ 15; *Burton*, 2014-Ohio-1962 at ¶ 14. Thus, the "purpose of a nunc pro tunc entry is to have the judgment of the court reflect its true action." *Miller v. Short*, 6th Dist. Lucas No. L-96-162, 1997 WL 22602, *2 (Jan. 17, 1997). A nunc pro tunc entry cannot be used to supply omitted action. *State v. Steigerwald*, 6th Dist. Lucas Nos. L-10-1104 and L-

[i]f the court grants a motion for judicial release under this section, the court shall order the release of the eligible offender, shall place the eligible offender under an appropriate community control sanction, under appropriate conditions, and under the supervision of the department of probation serving the court and shall reserve the right to reimpose the sentence that it reduced if the offender violates the sanction. * * * The period of community control shall be no longer than five years.

10-1105, 2011-Ohio-1398, ¶ 21.  "An improper nunc pro tunc order is void."  *State v. Jama*, 189 Ohio App.3d 687, 2010-Ohio-4739, ¶ 14 (10th Dist.).

{¶ 17} The February 22, 2012 entry granting judicial release placed appellant on community control for a period of one year.  In December 2012, the trial court issued a corrective entry ordering appellant "to resume his original community control period of five (5) years" because "[i]t was the Court's intention to have the defendant resume his original sentence of five (5) years on community control[.]"  Thereafter, the trial court denied appellant's motion to dismiss on the ground the "Corrective Entry reflected what the Court actually decided."  Subsequently, before revoking appellant's community control sanction during a hearing in August 2013, the trial court stated, "the Court's intention was certainly to place this Defendant on the remaining term of his probation, what, the 3-and-a-half years, the first year to be intensive."

{¶ 18} It is not disputed that the trial court's corrective entry was a nunc pro tunc entry.  Upon reviewing the transcript of the judicial release hearing, we find that the trial court improperly used the corrective entry to impose a sanction on appellant that was not imposed at the judicial release hearing.

{¶ 19} During the hearing, the trial court engaged in a colloquy with appellant as to why it should grant judicial release, given appellant's repeated failure to comply with the terms of his community control.  During the colloquy, the trial court sternly questioned appellant about his desire to seek judicial release rather than serve the balance of his prison sentence, and reminded him of the numerous "breaks" he had already received.  The trial court also told appellant, "You know if I approve your request for judicial release today you start probation all over again?"  Appellant replied, "Yes, Sir."  Later on, the following exchange occurred:

THE COURT:  All right.  So if the Court – how – how long were

- 6 -

you on probation before?

THE DEFENDANT: A year and a half?

THE COURT: A year and a half, so you have 3 and a half years left of probation?

THE DEFENDANT: Uh-huh.

THE COURT: So you could serve until October of this year and be completely done, or you'll have 3 and a half years of my intensive supervision?

THE DEFENDANT: I would like the supervision.

THE COURT: Okay. And if you fail, what's going to happen?

THE DEFENDANT: I'll go back to prison.

{¶ 20} Following this exchange, the colloquy continued, with the trial court again questioning appellant about his motion for judicial release given his recurring failure to comply with community control. Then, at the conclusion of the hearing, the trial court granted appellant's motion for judicial release and placed appellant "on intensive supervision for a period of not less than one year." Despite its earlier discussion with appellant, the trial court failed to specifically address the period of community control to be imposed when it announced its sentence from the bench. Following the hearing, the trial court journalized its February 22, 2012 judgment entry which placed appellant on community control for a period of one year.

{¶ 21} As stated earlier, nunc pro tunc entries are limited in proper use to reflecting what the court *actually decided*, and not what the court might or should have decided or what the court intended to decide. *Lester*, 2011-Ohio-5204 at ¶ 18. Thus, a nunc pro tunc entry may be used, and is appropriately used, to correct a sentencing entry to reflect the sentence the trial court actually imposed upon a defendant at a sentencing hearing. *State v. Fugate*, 12th Dist. Butler No. CA2000-02-031, 2000 WL 1708508, *2 (Nov. 13, 2000); *State v.*

*Stevens*, 9th Dist. Summit No. 16998, 1995 WL 464721, *4 (Aug. 2, 1995).

**{¶ 22}** While the transcript of the judicial release hearing shows that the trial court discussed appellant's community control and its conditions during its colloquy with appellant, and undoubtedly intended to impose the balance of the five-year period of community control, *it is not what the trial court actually imposed* at the conclusion of the hearing (or in its February 22, 2012 entry) when it granted appellant's motion for judicial release and imposed its sentence in open court. The corrective entry may reflect what the trial court *intended to decide* or *should have decided* at the judicial release hearing. It does not reflect what the trial court *actually imposed*.

**{¶ 23}** We note that the trial court never characterized what happened as a "clerical error," but rather what it intended to do (but did not), first in its corrective entry ("it was the *Court's intention* to have the defendant resume his original sentence of five years on community control"), and then again, during the August 2013 hearing before revoking appellant's community control sanction ("the *Court's intention* was certainly to place this Defendant on the remaining term of his probation"). (Emphasis added.) Consequently, the trial court's use of the corrective entry to order appellant to resume his original community control period of five years was improper because it does not reflect what the trial court did decide at the judicial hearing but recorded improperly. *See Miller*, 2010-Ohio-5705 at ¶15; *State v. Brown*, 136 Ohio App.3d 816 (3d Dist.2000).

**{¶ 24}** We also note that the trial court's imposition of the one-year period of community control in its February 22, 2012 entry is not inconsistent with what occurred at the judicial release hearing, where the trial court did not address the period of community control when it announced its sentence. The only definitive statement as to the period of community control to which appellant would be subject is the one-year period imposed pursuant to the February 22, 2012 entry. Therefore, the trial court lacked jurisdiction to reconsider its

February 22, 2012 entry pursuant to the "clerical error" exception in *Miller*. *Miller* at ¶ 14.

**{¶ 25}** We are mindful that appellant did not appeal the trial court's December 10, 2012 corrective entry at the time it was issued. However, appellant subsequently challenged the trial court's subject-matter jurisdiction in his motion to dismiss. Criminal subject-matter jurisdiction "refers to a court's ability to hear and finally determine a certain criminal charge, including the sentencing of a defendant following conviction and any other penalties imposed." *Lyttle v. State*, 12th Dist. Butler No. CA2010-04-089, 2012-Ohio-3042, ¶ 11.

**{¶ 26}** "The defense of lack of subject-matter jurisdiction can never be waived." *Id.* at ¶ 12. Further, "lack of subject-matter jurisdiction may be raised at any time, even collaterally in a subsequent or separate proceeding." *Id.* In addition, a void judgment may be challenged at any time. *See Black's Law Dictionary* 861 (8th Ed.2004) (a void judgment is "a judgment that has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected at any time and any place, whether directly or collaterally"); *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, ¶ 30 (holding that while res judicata applies to a voidable sentence, res judicata does not apply to a void sentence).

**{¶ 27}** In light of the foregoing, we find that the trial court's December 10, 2012 corrective entry was an improper nunc pro tunc entry and thus was void and must be disregarded. *Jama*, 2010-Ohio-4739 at ¶ 14; *Brown*, 136 Ohio App.3d at 820. We wish to emphasize that our decision is not meant to restrict a trial court's ability to use a nunc pro tunc entry to correctly reflect a sentence the trial court actually imposed during a sentencing hearing. *See Fugate*, 2000 WL 1708508 (upholding trial court's appropriate use of a nunc pro tunc entry so that the sentencing entry mistakenly sentencing the defendant to two years in prison correctly reflected the three-year prison sentence actually imposed by the trial court at the sentencing hearing). This case, however, presents an inappropriate use of a nunc pro tunc entry.

{¶ 28} Pursuant to the trial court's February 22, 2012 entry, appellant's one-year term of community control ended on February 22, 2013, as did the trial court's jurisdiction over appellant. *See Hoy*, 2005-Ohio-1093. As a result, the June 2013 filing of community control violation was outside the trial court's jurisdiction. Appellant's assignment of error is accordingly sustained.

{¶ 29} The judgment denying appellant's motion to dismiss is reversed as the December 10, 2012 entry correcting appellant's term of community control was void, and appellant is discharged from further community control supervision.

HENDRICKSON, P.J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 30} The trial court was well-within its authority to issue a nunc pro tunc entry to correct an obvious error in its judgment entry, so I must respectfully dissent. The majority opinion negates the ability of a trial court to use a nunc pro tunc entry to correctly reflect what actually took place in court. As the trial court's nunc pro tunc entry indicates, it was a corrective entry to reflect "what the court actually decided." The trial court did not issue a new sentence, but rather only a new sentencing entry. *State v. Wooden*, 10th Dist. Franklin No. 13AP-557, 2014-Ohio-316.

{¶ 31} As discussed by the majority, Crim.R. 36 expressly provides, "clerical mistakes in judgments, orders, or other parts of the record, *and errors in the record arising from oversight or omission*, may be corrected by the court at any time." (Emphasis added.) While the majority opinion concludes that the nunc pro tunc entry is a reflection of what the trial court intended to do, rather than what was actually decided at the judicial release hearing, I

must disagree. The trial court issued its nunc pro tunc entry in order to correct its true action of reimposing the rest of Waltz's five-year probationary period and conditions. The record supports this entry correction. A nunc pro tunc entry is often used to correct a sentencing entry due to "oversight or omission." *State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235.

{¶ 32} The transcript of the judicial release hearing is resolute on this point. Therein, the trial court expressly informed Waltz twice that it was reimposing the remaining three and one-half year probationary period. The trial court noted the first time, "you know that if I approve your request for judicial release today you start probation all over again?  * * * Including the sex offender treatment? We're going to test you. We're going to test you left and right on your drug usage, and if you fail I'm going to send you back to prison no questions asked?" Waltz confirmed that he understood that he would be subject to continued control, was subject to a suspended sentence, and reiterated his desire to be released early.

{¶ 33} The court, for a second time, informed Waltz that he had the option of either completing his prison sentence and being "completely done, *or you'll have three and a half years of my intensive supervision.*" (Emphasis added.) There is no indication in the remaining pages of the judicial release transcript that the trial court somehow changed its mind and decided to eliminate the remaining three and one-half years of community control. Instead, the trial court granted the judicial release with the clear indication to Waltz that he would be subject to three and one-half years of community control.

{¶ 34} During the same hearing, Waltz's counsel moved the court to release Waltz early, and stated that he too had "posed the question" to Waltz about facing the remaining community control rather than serving out his prison sentence. Waltz's counsel spoke about how much Waltz wanted to be released early because prison had changed him and he was

ready to prove to his family and friends that he was able to succeed through the rest of his probationary period. The reasonable inference is that Waltz was well aware before, during, and after the judicial release hearing that the entire community control sentence was being reimposed, and that he would face three and one-half years of community control.

{¶ 35} Because the nunc pro tunc entry conformed to everyone's understanding of what the trial court had done, Waltz did not object to the trial court's nunc pro tunc entry. Waltz was well-informed by the trial court and defense counsel that he would be required to complete his community control, and Waltz welcomed the opportunity to show that he was committed to completing community control successfully. In fact, had Waltz completed his term successfully, no challenge would be made to the trial court's nunc pro tunc entry.

{¶ 36} Only because Waltz failed once more to abide by the terms of his community control did he raise a challenge to the court's corrective entry. While I agree with the majority that Waltz is permitted to challenge jurisdiction at any time and has not waived his argument, I nonetheless find a lack of objection to the issuance of the nunc pro tunc entry to be telling. Waltz walked away from the judicial release hearing knowing full well he had three and one-half years of probation.

{¶ 37} I would further note that throughout the judicial release hearing, the trial court makes multiple references to Waltz being subjected to multiple terms of community control. At one point, the trial court expressly stated that "all the other conditions that were previously imposed are reimposed such as they've been announced one [sic] before." The trial court's reimposition of the exact same conditions as those conditions that had been announced before supports my conclusion that the trial court's correction was mechanical in nature, rather than reaching new legal conclusions or decisions. The trial court did not change its course, and instead, was only reinstituting the sentence that had been imposed before. Waltz understood this as well.

{¶ 38} If the trial court had truly issued a sentence of only one year of supervision, the trial court would not have made reference to reimposing all the previous conditions as previously announced. There is no reason to believe the trial court would have drastically changed course during the judicial release hearing by imposing a much shorter community control sanction without making definitive reference to the one-year sentence as the only sentence it was imposing. This is especially true where the trial court expressed to Waltz this sentence was essentially his last chance at avoiding returning to prison upon a violation of community control conditions.

{¶ 39} The trial court spent the majority of the hearing discussing the many ways that Waltz had failed each time he was given an opportunity to succeed at community control, and the trial court reiterated multiple times the swiftness with which the court would send Waltz back to prison should Waltz violate the terms of his probation once more. The record demonstrates that the trial court did not *decrease* the amount of time Waltz would be on community control from three and one-half years to only one. From the history of Waltz's numerous violations, such a decrease would be nonsensical and is contrary to the trial court's expressed statements. The record indicates that the trial court reimposed the remaining three and one-half years of community control and clearly anticipated Waltz being subject to that complete term.

{¶ 40} Both the trial court and Waltz understood the sentence actually given at the hearing. It was entirely reasonable for the trial court to say in its corrective entry, it intended to articulate the same sentence in its prior (incorrect) entry. Yet the majority determines the incorrect entry, the one with "oversight or omission" is an entry that cannot be corrected by the trial court.

{¶ 41} The trial court's nunc pro tunc entry corrected an "oversight or omission." The nunc pro tunc entry did not, however, involve a new legal decision or different judgment from

the one discussed by the trial court at the judicial release hearing. The trial court recognized its oversight or omission in the prior entry, and correctly used the nunc pro tunc entry so that the record speaks the truth. Crim.R. 36 does not prohibit the trial court from correcting an oversight or omission. This is especially true where the record clearly indicates that the trial court actually imposed a sentence different than what was recorded in error on the original judgment entry.

{¶ 42} Courts possess inherent authority to correct errors in judgment entries so that the record speaks the truth. *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111. The trial court spoke its truth at the judicial release hearing by expressly telling Waltz that he would be subject to three and one-half remaining years of community control. The judgment entry, however, did not reflect what the court actually decided, and the trial court issued a nunc pro tunc entry to correct that oversight or omission. Since *Qualls* courts have consistently permitted the use of a nunc pro tunc entry to correct a defective sentencing entry. *State v. Harris*, 8th Dist. Cuyahoga No. 99919, 2014-Ohio-925.

{¶ 43} Since Crim.R. 36 anticipates the correction "arising from oversight or omission," I would find that its nunc pro tunc entry was valid, and I would affirm the trial court's decision. Therefore, I respectfully dissent from the majority opinion.